**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN**

ESSIE MOORE,

      Plaintiff,

                                      CIVIL ACTION NO.

v.

RITE-HITE HOLDING CORPORATION,

      Defendant.

## COMPLAINT

NOW COMES the Plaintiff, Essie Moore, by and through her attorneys, McDonald Law Firm, LLC, and as and for her Complaint against the Defendant, Rite-Hite, alleges and shows to the court as follows:

### NATURE OF THE ACTION

This action arises under Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), The Americans with Disabilities Act ("ADA"), and Family and Medical Leave Act (hereinafter, "FMLA") to correct unlawful employment practices including discrimination and retaliation under Title VII and the ADA and interference and retaliation under the FMLA , and to provide appropriate relief to the Plaintiff who was adversely affected by such practices. Plaintiff seeks a permanent injunction against Defendant, lost wages, lost employment benefits, liquidated damages, non-pecuniary compensatory damages, punitive damages, costs, attorney's fees, and any other such relief the Court may deem appropriate.

1

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is proper pursuant to 28 USC §1331. This action is authorized and instituted pursuant to the FMLA (29 U.S.C. § 2601 et seq.), ADA (42 U.S.C. § 12101 et seq.), and Title VII (42 USC §2000e-2 et seq.).

2. Venue is proper in this Court pursuant to 28 USC §1391(b) and (c). The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of Wisconsin, and the employment records relevant to such practices are maintained and administered within the Eastern District of Wisconsin.

## PARTIES

3. The Plaintiff, Essie Moore ("Moore") is an adult resident of the State of Wisconsin with a residence located at 7926 N 107 Street Apt 5, Milwaukee, WI 53224.

4. The Defendant, Rite-Hite Holding Corporation, is a Wisconsin corporation with a headquarters located at 195 S Rite Hite Wy, Milwaukee, WI 53204.

## STATEMENT OF FACTS

5. Moore began working for Rite-Hite in or around July 2016.

6. Moore was hired at Rite-Hite as a Billing Coordinator and later worked as a Collections Specialist.

7. At all relevant times, Rite-Hite was an employer within the meaning of the ADA, Title VII, and FMLA.

8. At all relevant times, Moore was an employee eligible for the protections of the ADA, Title VII, and FMLA.

**Facts Related to Discrimination in Promotion and Compensation**

2

9. Moore sought advancement opportunities within Rite-Hite and applied for multiple open positions throughout her employment.

10. On or about May 7, 2024, Moore applied for a Payroll Specialist position.

11. On or around May 28, 2024, Rite-Hite denied Moore's application for the Payroll Specialist position.

12. On or about June 18, 2024, Moore applied for a Contractor Billing and Collections Manager position.

13. On or about June 18, 2024, Rite-Hite denied Moore's application for the Contractor Billing and Collections Manager position.

14. Rite-Hite filled the Contractor Billing and Collections Manager position with Jamie Gaudynski in or around August 2024.

15. On or about December 26, 2024, Rite-Hite Talent Acquisition sent employees an email about an opening for a Leave of Absence and Disability Administrator position.

16. On or about January 2, 2025, Moore applied for the Leave of Absence and Disability Administrator position.

17. On or about January 8, 2025, Michael Shaw from Rite-Hite's Talent Acquisition Team contacted Moore about her Leave of Absence and Disability Administrator application and asked if anyone had reached out to her.

18. Moore responded that no one had reached out to her concerning her application.

19. Michael Shaw then told Moore that the role was not going to be the right fit for her.

20. Michael Shaw also notified Moore about an HR Generalist opening.

21. On or about January 8, 2025, Moore applied for the Human Resources Generalist position.

3

22. In January 2025, Rite-Hite denied Moore's application for the HR Generalist position.

23. In or around February 2025, Moore received a performance review that she believed was discriminatory and inconsistent with her work history, performance, and contributions.

24. On or about February 5, 2025, Moore emailed Rite-Hite's Director of Human Resources, Christina Werner, regarding her concerns about her recent performance review.

25. On or about February 7, 2025, Moore sent Werner a written request disputing her performance review.

26. On or about March 7, 2025, Werner responded to Moore's performance review dispute and stated that the review and all ratings would remain unchanged.

27. On or about March 12, 2025, Moore requested a merit increase or other compensation based upon the work Moore had performed outside her role during the months of June and July.

28. On or about March 14, 2025, Werner responded that Moore was not permitted to seek a merit increase.

29. On or about March 24, 2025, Moore filed a Charge of Discrimination with the Equal Employment Opportunity Commission.

30. In her Charge, Moore alleged Rite-Hite unlawfully denied her promotional opportunities, including the Payroll Specialist position, the Contractor Billing and Collections Manager position, and the HR Generalist position.

31. Moore also alleged that her February 2025 performance evaluation and merit increase were discriminatory.

4

32. Upon information and belief, the individuals Rite-Hite selected for the positions Moore applied for were white.

33. Upon information and belief, the white individuals Rite-Hite selected for those positions were less qualified than Moore.

34. Upon information and belief, Rite-Hite's failure to select Moore for advancement opportunities was based on Moore's race.

35. Rite-Hite's failure to select Moore for advancement opportunities and its handling of Moore's performance review and merit increase harmed Moore's compensation, advancement opportunities, and employment conditions.

**Facts Related to Rite Hite's Failure to Accommodate Moore**

36. On or about March 20, 2024, Moore saw Dr. Matthew Richlen related to caregiver stress.

37. Dr. Richlen recommended that Rite-Hite allow Moore flexible work hours, including remote work up to five days per week when needed.

38. On or about March 22, 2024, Rite-Hite was informed of Moore's need for reasonable accommodation.

39. On or about March 26, 2024, Rite-Hite approved Moore for an accommodation through March 2025.

40. The approved accommodation provided Moore a flexible remote-work schedule based on exacerbation of her symptoms.

41. Under that accommodation, Moore was permitted to work remotely based on her day-to-day needs, provided she notified her supervisor before her start time if she needed to work from home on a particular day.

5

42. On or about January 2, 2025, Mancl notified Moore that Moore's work accommodation was effective through January 1, 2025.

43. That same day, Moore requested the form for her doctor to update her workplace accommodation.

44. On or about January 3, 2025, Mancl responded that she would work on sending Moore the form for an accommodation renewal.

45. On or about March 13, 2025, Moore sent an updated flexible-work-arrangement letter to Mancl.

46. Mancl notified Moore that Walsh would work with Moore on her accommodation request.

47. Walsh requested a copy of Moore's doctor's note, and Moore provided it the same day.

48. On or about March 17, 2025, Walsh told Moore there was a new process for accommodations and asked Moore to have her doctor complete an accommodation form by March 31, 2025.

49. On or about March 21, 2025, Moore's doctor faxed a new accommodation form to Walsh.

50. On or about March 25, 2025, Moore emailed Walsh asking for a status update on the requested accommodation.

51. On or about March 26, 2025, Walsh confirmed receipt of Moore's new accommodation paperwork and stated that an update would be sent within five business days.

52. Moore asked for an update sooner than five days because the original request had been made on March 7, 2025 and the accommodation was a time-sensitive medical matter.

53. On or about April 6, 2025, Moore filed an Amended Charge of Discrimination alleging that Rite-Hite denied her a reasonable accommodation for her disability and retaliated against her for engaging in protected activity.

54. On or about April 10, 2025, Walsh told Moore that Rite-Hite had not approved or denied a work-from-home accommodation past January 2025 because Rite-Hite claimed it did not have sufficient information to make that determination.

55. Walsh also stated that Rite-Hite needed a follow-up letter from Dr. Richlen to better understand Moore's condition, its impact on Moore's job, and possible accommodations.

56. Walsh further stated that if the information was not provided or did not support the need for remote work as an accommodation, Moore would be expected to work in the office three days per week and two days at home.

57. Rite-Hite did not timely approve Moore's requested renewal of the flexible remote-work accommodation that had previously been approved for substantially similar medical needs.

58. Rite-Hite's delay and failure to approve the accommodation placed Moore at risk of being required to work in a manner inconsistent with her medical restrictions and accommodation needs.

**Facts Related to Moore's FMLA**

59. Moore had FMLA-related leave needs, including leave associated with her own medical condition of IBS and caregiver stress and caregiver leave associated with her husband's serious health condition.

60. On or about December 14, 2023, Rite-Hite Benefits Analyst Lena Martinez sent Moore an FMLA Family Member Recertification Physician Form.

7

61. On or about January 24, 2024, Moore forwarded the completed FMLA Family Member Recertification form.

62. On or about June 12, 2024, Moore submitted a medical PTO time request for her husband.

63. On or about January 6, 2025, Moore emailed Benefits Manager Caley Mancl to ask about FMLA approval for her husband and to ensure that it did not lapse.

64. On or about January 7, 2025, Mancl responded that she would look into the issue and get back to Moore regarding her husband's FMLA.

65. On or about March 31, 2025, Rite-Hite approved Moore for intermittent FMLA leave from March 17, 2025 through March 16, 2026.

66. Rite-Hite approved Moore's intermittent leave for flare-ups approximately three to four times per month for up to two days per episode.

67. Rite-Hite also approved Moore for caretaker leave from January 1, 2025 through December 31, 2025 for flare-ups one time per month for up to five days per episode.

68. On or about April 2, 2025, Moore emailed a Certification of Health Care Provider for Family Member's Serious Health Condition FMLA form.

69. On or about April 10, 2025, Kelsey Walsh told Moore that Rite-Hite's FMLA approval was based on information from Moore's health-care provider and that Rite-Hite approved leave if it received documentation confirming an FMLA-qualifying health condition.

70. Rite-Hite was aware of Moore's FMLA-protected leave needs and had approved Moore for intermittent FMLA leave and caretaker leave.

8

71. Rite-Hite nevertheless subjected Moore to adverse treatment in connection with her protected leave and related medical needs, including delay or obstruction of related accommodation processes and conduct that contributed to Moore's forced resignation.

72. All conditions precedent have been satisfied for bringing this action under Title VII and the ADA as Moore filed her claims with the EEOC (Claim No. 443-2025-01906) and received a Right to Sue Letter on February 27, 2026. Moore filed the instant action within 90 days of her receipt of the Right to Sue Letter.

## STATEMENT OF LEGAL CLAIMS

## COUNT I – DISCRIMINATION AND RETALIATION UNDER TITLE VII

73. Moore incorporates paragraphs 1 through 72 as if fully set forth herein.

74. Moore is a member of a protected class as she is African American and her color is Black.

75. Rite-Hite meets the definition of an employer covered by Title VII.

76. Moore engaged in protected activity by opposing discrimination and by filing an EEOC Charge and Amended Charge.

77. Rite-Hite knew or should have known that Moore engaged in a protected activity.

78. Rite-Hite subjected Moore to adverse employment actions and materially adverse treatment, including denying promotions or transfers, maintaining unfair performance ratings, denying compensation opportunities, and forcing Moore's resignation.

79. Rite-Hite denied Moore promotional opportunities and selected Caucasian, White, less-qualified applicants for positions Moore applied for.

80. Rite-Hite's conduct was motivated by Moore's race, color, EEOC complaints, and/or opposition to discrimination in the workplace.

9

81. As a result of the aforementioned willful violations of Title VII, Moore is entitled to reinstatement or front pay in lieu of reinstatement, lost pay, lost benefits, out of pocket expenses, non-pecuniary compensatory damages, punitive damages, and attorney's fees and litigation costs.

82. Pursuant to 29 U.S.C. § 2617(a)(3), Moore is entitled to reimbursement of the costs and attorney's fees expended in successfully prosecuting this FMLA action.

## COUNT II – DISABILITY DISCRIMINATION AND FAILURE TO ACCOMMODATE UNDER THE ADA

83. Moore incorporates paragraphs 1 through 72 as fully set forth herein.

84. Moore is an individual with a disability within the meaning of the ADA, has a record of disability, and/or was regarded by Rite-Hite as having a disability.

85. Rite-Hite knew of Moore's disability and accommodation needs.

86. Moore requested reasonable accommodations, including a flexible remote-work arrangement based on exacerbation of her medical symptoms.

87. Rite-Hite had previously approved Moore for a flexible remote-work accommodation for substantially similar medical needs.

88. Rite-Hite failed to timely and reasonably accommodate Moore's disability.

89. Rite-Hite failed to engage in a good-faith interactive process regarding Moore's accommodation requests.

90. Rite-Hite subjected Moore to adverse employment actions and materially harmful treatment because of her disability and/or need for accommodation.

91. Rite-Hite acted intentionally, willfully, maliciously, and/or with reckless indifference to Moore's federally protected rights.

## COUNT III – INTERFERENCE, RESTRAINT, AND RETALIATION UNDER FMLA

92. Moore incorporates paragraphs 1 through 72 as if fully set forth herein.

93. Moore is an eligible employee under the FMLA as she had worked for Rite-Hite for over one year and was employed for at least 1,250 hours of service in the preceding year.

94. Rite-Hite meets the definition of a covered employer under the FMLA.

95. Moore qualified for leave under the FMLA as she was employed with Rite-Hite for over one year and had worked more than 1250 hours in the twelve months preceding her request for leave under FMLA.

96. Moore was entitled to FMLA leave for her own serious health condition and to care for her husband's serious health condition.

97. Rite-Hite approved Moore for intermittent FMLA leave from March 17, 2025 through March 16, 2026, and for caretaker leave from January 1, 2025 through December 31, 2025.

98. Rite-Hite was aware of Moore's need for FMLA-protected leave.

99. Rite-Hite interfered with, restrained, or denied Moore's exercise or attempted exercise of FMLA rights by failing to respect Moore's protected leave needs and by subjecting Moore to adverse changes in the terms and conditions of employment in connection with her protected leave and related medical needs.

100. Rite-Hite's conduct caused Moore damages, including lost wages, lost benefits, and other monetary losses.

101. Rite-Hite's violations of the FMLA were willful.

102. As a result of the aforementioned willful violations of the FMLA, Moore is entitled to payment of lost wages and benefits, and an additional, equal amount as liquidated damages in accordance with 29 U.S.C. § 2617(a)(1).

103. Pursuant to 29 U.S.C. § 2617(a)(3), Moore is entitled to reimbursement of the costs and attorney's fees expended in successfully prosecuting this FMLA action.

## PRAYER FOR RELIEF

104. Grant a permanent injunction against the Defendant and its officers, assigns and all persons in active concert or participation with them, from engaging in any employment practice which interferes with or restrains an employee's rights under Title VII, FMLA, and ADA.

105. Grant a permanent injunction against the Defendant and its officers, assigns and all persons in active concert or participation with them, from engaging in any employment practice which discriminates on the basis of gender, disability, and opposition to discrimination.

106. Order the Defendant to institute and carry out policies, practices and programs that comply with the mandates of the ADA, Title VII, and FMLA.

107. Order the Defendant to compensate Moore by providing reinstatement of her previous position and appropriate back pay, front pay, liquidated damages, attorney's fees, and costs for its violation of the FMLA.

108. Order the Defendant to compensate Moore by providing reinstatement of her previous position and appropriate back pay, front pay, liquidated damages, attorney's fees, and costs for its violation of the ADA.

109. Order the Defendant to compensate Moore by providing reinstatement of her previous position and appropriate back pay, front pay, non-pecuniary compensatory damages, punitive damages, attorney's fees, and costs for its violation of Title VII.

110. Grant such further relief as the Court deems necessary and proper in the public interest.

## JURY TRIAL DEMANDED

The Plaintiff, Essie Moore, requests a jury trial on all questions of fact raised by this complaint.

Dated on this 27th day of May, 2026.

**MCDONALD LAW FIRM, LLC**
Attorneys for Plaintiff


By:   s/Shannon D. McDonald
      Shannon D. McDonald
      WI State Bar No. 1036954
      N96W18221 County Line Rd. #200
      Menomonee Falls, WI 53051
      Office: (262) 252-9122
      Fax:   (414) 395-8773
      sdm@themklaw.com

13